UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WEST COAST LIFE INSURANCE COMPANY,<br><br>               Petitioner,<br><br>    v.<br><br>SWISS RE LIFE & HEALTH AMERICA INC., as administrator for The Lincoln National Life Insurance Company,<br><br>               Respondent. | Case No.   21-cv-5317<br><br>**PETITION TO CONFIRM FINAL ARBITRATION AWARD** |

Petitioner West Coast Life Insurance Company ("WCL"), by its attorneys, Foley & Lardner LLP, respectfully petitions this Court for an order, pursuant to Section 9 of the Federal Arbitration Act, 9 U.S.C. § 1 et seq.: (1) confirming the final award issued in the arbitration proceeding between WCL and respondent Swiss Re Life & Health America Inc., as administrator for The Lincoln National Life Insurance Company ("Swiss Re"); (2) directing that judgment be awarded in favor of WCL and against Swiss Re on the final award; and (3) granting such other and further relief to WCL as the Court deems just and proper.

WCL alleges as follows in support:

## PARTIES

1.     WCL is a Nebraska corporation with its principal place of business in Birmingham, Alabama.  WCL is a wholly owned subsidiary of Protective Life Insurance Company, a Tennessee corporation with its principal place of business in Birmingham, Alabama.

2.     Upon information and belief, Swiss Re is a Missouri corporation with its principal place of business in Armonk, New York.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a) because WCL and

Swiss Re are citizens of different states, and the amount in controversy exceeds $75,000,

exclusive of interest and costs.

4.      This Court has personal jurisdiction over Swiss Re because Swiss Re is

headquartered in and regularly conducts business in New York.

5.      Further, under the arbitration provisions of the relevant agreements, the parties

consented to the jurisdiction of a United States Federal District Court "to confirm and enforce

the performance of any award of the arbitrators."

6.      Venue in this district is proper under 28 U.S.C. § 1391(b)(1) because Swiss Re is

a resident of Armonk, New York, and under 28 U.S.C. § 1391(b)(2) because the reinsurance

agreement at issue was administered and performed in Armonk, New York and, therefore, a

substantial part of the events or omissions giving rise to the claim occurred in this district.

## BACKGROUND

7.      WCL and The Lincoln National Life Insurance Company ("Lincoln National")

were parties to two Yearly Renewable Term Reinsurance Agreements dated October 15, 1996

and April 1, 1998 (the "Treaties").  Copies of the Treaties (with certain non-relevant appendices

and attachments omitted) are attached as **Exhibits 1** and **2**, respectively.

8.      Effective December 7, 2001, via an indemnity reinsurance transaction, Swiss Re

acquired Lincoln National's assumed life reinsurance business, including the Treaties, and

became solely responsible for Lincoln National's financial rights and obligations pursuant to the

Treaties.  Further, from that point forward, Swiss Re became the administrator of the acquired

Lincoln National reinsurance operations, including the Treaties, and has functioned as the real party in interest under the Treaties at all times relevant to this Motion.

9.      Pursuant to the Treaties, Swiss Re reinsures a portion of certain life insurance policies issued by WCL.

10.     The Treaties require binding arbitration of any "dispute that arises out of or relates to th[e] Agreement." *E.g.,* Exhibit 2 at 10, 27-28.

11.     The Treaties each contain a provision entitled "Payments by WCL" that states in relevant part at subpart D:  "So that Lincoln need not maintain deficiency reserves in connection with the reinsurance premiums payable pursuant to this Agreement, the premium rates specified in the Premium Schedule shall only be guaranteed for one (1) Policy year.  Nevertheless, Lincoln shall anticipate continuing to accept reinsurance on the basis of such rates for all Policies originally ceded pursuant to such rates."

12.     Disputes arose between WCL and Swiss Re concerning Swiss Re's entitlement to unilaterally increase the YRT reinsurance premiums under the Treaties and, in particular, pursuant to the provisions quoted above.

13.     On March 9, 2018, Swiss Re demanded arbitration of the disputes pursuant to the Treaties.

14.     Pursuant to the arbitration provisions in the Treaties, a panel of three arbitrators (the "Panel") was duly appointed.

15.     WCL and Swiss Re accepted the Panel as duly constituted and properly formed.

16.     WCL and Swiss Re subsequently conducted discovery and submitted pre-hearing briefs to the Panel.

17.    A final evidentiary hearing was held beginning on April 19, 2021 and ending on April 25, 2021.

18.    On April 28, 2021, the Panel issued a unanimous Final Award resolving the parties' dispute regarding Swiss Re's claimed right to increase the YRT reinsurance rates under the Treaties.  A copy of the Final Award is attached as **Exhibit 3**.

19.    This Petition is brought within one year of the Final Award.

20.    No prior application has been made to this or any other Court for the relief requested in this Petition.

21.    Respondent has not sought to vacate, modify, or correct the Final Award.

WHEREFORE, WCL respectfully requests that the Court enter an Order in the form of the proposed order submitted herewith: (1) confirming the Final Award, (2) entering judgment in favor of WCL and against Swiss Re on the Final Award, and (3) granting to WCL such other and further relief as the Court deems just and proper.

Dated: June 16, 2021

FOLEY & LARDNER LLP

By:  s/Rachel E. Kramer
　　　Rachel E. Kramer
90 Park Avenue
New York, New York 10016
(212) 338-3545
rkramer@foley.com

*Counsel for Petitioner West Coast Life Insurance Company*

# EXHIBIT 1

# LINCOLN NATIONAL

# YEARLY RENEWABLE TERM
# REINSURANCE AGREEMENT

**Effective as of October 15, 1996**

between

**WEST COAST LIFE INSURANCE COMPANY**
of
**San Francisco, California,**

referred to in this Agreement as "WCL," and

**THE LINCOLN NATIONAL LIFE INSURANCE COMPANY**
of
**Fort Wayne, Indiana,**

referred to in this Agreement as "Lincoln."



EXHIBIT
WALKER
#1
DATO 25 9

Inspected By  *EIG*

Date  *9/16/97*

Doc  970194sl.agm

CCN/Agmt. No.  117/32

CONFIDENTIAL

# TABLE OF CONTENTS

| | |
|---|---|
| Reinsurance Coverage | 1 |
| Automatic Reinsurance | 1 |
| Facultative Reinsurance | 2 |
| Continuations | 3 |
| Terms of Reinsurance | 4 |
| Payments by WCL | 4 |
| Payments by Lincoln | 5 |
| Reinsurance Administration | 5 |
| Settlement of Claims | 5 |
| Reinstatements | 7 |
| Reductions in Insurance | 7 |
| Increases in Policy Net Amount at Risk | 8 |
| Changes in Retention | 8 |
| Assignment of Reinsurance | 9 |
| Material Changes | 9 |
| Errors | 10 |
| Audits of Records and Procedures | 10 |
| Arbitration | 10 |
| Insolvency of WCL | 11 |
| Offset | 11 |
| Parties to the Agreement | 12 |
| Commencement and Termination | 12 |
| Entire Agreement | 12 |
| Deferred Acquisition Cost Tax Election | 13 |
| Definitions | 13 |
| Execution | 15 |
| | |
| LIFE BENEFITS SCHEDULE | 17 |
| ADMINISTRATION SCHEDULE | 19 |
| PREMIUM SCHEDULE | 22 |
| ARBITRATION SCHEDULE | 24 |
| WAIVER OF PREMIUM BENEFIT ADDENDUM | 26 |
| PREMIUM RECEIPT ADDENDUM | 29 |

**Reinsurance Coverage**

A. WCL agrees to cede, and Lincoln agrees to accept, reinsurance of the Policies specified in the Life Benefits Schedule. (The term "Policies" and certain other terms used in this Agreement are defined in the "Definitions" article.)

B. The death benefits provided by the Policies are reinsured. Supplemental benefits are reinsured if and as specified in applicable Addenda.

C. WCL agrees to either
    (1) cede reinsurance of a Policy to Lincoln as Automatic Reinsurance;
    (2) submit the Policy to Lincoln for consideration as Facultative Reinsurance; or
    (3) cede reinsurance of a Policy as a Continuation.

**Automatic Reinsurance**

A. WCL agrees to cede the Reinsurance Amount of a Policy as Automatic Reinsurance if the following conditions are met:
    (1) it retains its Retention on the insured life when the Policy is issued;
    (2) it underwrites and issues the Policy in accordance with its normal individual life insurance underwriting rules and practices previously disclosed to Lincoln;
    (3) the sum of (a) and (b) does not exceed the sum of its Retention and the Automatic Limit, where (a) equals the amount of individual life insurance issued by WCL then in force on the insured life, or in the case of individual life insurance with increasing death benefits, the Ultimate Amount of such policies, and (b) equals the amount of life insurance currently being applied for from WCL, or in the case of individual life insurance with increasing death benefits, the Ultimate Amount;
    (4) the sum of (a) and (b) does not exceed the Participation Limit, where (a) equals the amount of individual life insurance then in force on the insured life in all companies, or in the case of individual life insurance with increasing death benefits, the Ultimate Amount of such policies, and (b) equals the amount currently applied for on the insured life from all companies, or in the case of individual life insurance with increasing death benefits, the Ultimate Amounts;



970194st.agm
117 / 32

CONFIDENTIAL

WCL- DL-0000136



(5) it has not submitted a facultative application to Lincoln or any other insurance or reinsurance company for reinsurance of the current application; and

(6) the Policy is not a Continuation.

B.   Policies issued pursuant to any special underwriting program adopted by WCL may be ceded as Automatic Reinsurance only with Lincoln's consent to reinsure such Policies.

C.   A Policy shall not be ceded as Automatic Reinsurance if the Reinsurance Amount of the Policy is less than the minimum cession amount specified in the Administration Schedule.

**Facultative Reinsurance**

A.   WCL agrees to submit Policies not satisfying the conditions for Automatic Reinsurance, and Policies which it does not wish to cede as Automatic Reinsurance, for consideration by Lincoln as Facultative Reinsurance. WCL may also submit for consideration as Facultative Reinsurance any individual life insurance issued on a Policy form that is not specified in the Life Benefits Schedule provided reinsurance terms and conditions are established and agreed upon by means of the Facultative Reinsurance application process.

B.   An application for Facultative Reinsurance shall be made in the manner set forth in the Administration Schedule. Copies of all information which WCL has pertaining to the insurability of the proposed insured, including written summaries of any such information which cannot be copied, shall accompany the application.

C.   Upon receipt of an application, Lincoln agrees to promptly examine the underwriting information and communicate

(1) an offer to reinsure the Policy as applied for;

(2) an offer to reinsure the Policy other than as applied for;

(3) an offer to reinsure the Policy subject to the satisfaction of additional underwriting requirements;

(4) a request for additional underwriting information; or

(5) its unwillingness to make an offer to reinsure the Policy.

D.   To accept an offer to reinsure made by Lincoln, WCL agrees to (1) satisfy any conditions stated in the offer to reinsure and (2) follow the procedure for placing reinsurance into effect as specified in the Administration Schedule.

970194al.agm
117/32

Page 2

CONFIDENTIAL

WCL- DL-0000137

E.  WCL agrees to inform Lincoln immediately of any additional information pertaining to the insurability of a proposed insured which is brought to WCL's attention before the completion of the procedures for accepting Lincoln's offer to reinsure. Upon its receipt of such information, Lincoln may withdraw or modify its earlier offer to reinsure.

F.  The terms of an offer to reinsure shall supersede the terms of this Agreement to the extent of any conflicts between the parties. Otherwise, reinsurance of a Policy ceded as Facultative Reinsurance shall be in accordance with the terms of this Agreement.

## Continuations

A.  If WCL issues a Continuation of a Policy within its normal continuation rules and practices, it agrees to reinsure the Continuation with Lincoln. Reinsurance shall continue (1) under the reinsurance agreement between WCL and Lincoln which provides reinsurance of the Policy form of the Continuation or (2) under this Agreement if there is no such agreement.

B.  A Policy which is a Continuation of a Policy that was not previously reinsured with Lincoln may only be reinsured under this Agreement with the written consent of Lincoln and the original reinsurer.

C.  If the original Policy was ceded to Lincoln as Facultative Reinsurance and WCL approves an increase in the face amount of the Continuation based upon receipt of any new information pertaining to the insurability of the proposed insured, WCL agrees to submit the Continuation to Lincoln for consideration as Facultative Reinsurance. In such case, Lincoln shall only be bound to reinsure the Continuation in accordance with its offer to reinsure the Continuation.

D.  Reinsurance at issue of the Continuation shall not exceed the Reinsured Net Amount at Risk of the original Policy immediately prior to the issuance of the Continuation.

E.  Premiums payable for reinsurance of a Continuation shall be calculated using the rate schedule applicable to the Policy form of the Continuation as specified in the Premium Schedule. If there is no rate schedule applicable to the Policy form of the Continuation, reinsurance premiums shall be payable using the rate schedule applicable to the original Policy.

CONFIDENTIAL

WCL- DL-0000138

F. If the Continuation results in a change in the life status of the insured risk from a single-insured plan to a joint- or multiple-insured plan, Lincoln must consent to the Continuation.

## Terms of Reinsurance



A. The plan of reinsurance shall be yearly renewable term reinsurance of the Reinsured Net Amount at Risk of a Policy.

B. Reinsurance of a Policy shall commence on the Policy date, except (1) in the case of Facultative Reinsurance, reinsurance shall commence on the Policy date only if Lincoln's offer to reinsure is the best offer of reinsurance received by WCL as determined by WCL's published reinsurance placement rules in effect as of such date, and (2) if a premium receipt is issued by WCL in connection with an application for the Policy, reinsurance shall commence prior to the Policy date only if and as specified in a Premium Receipt Addendum.

C. WCL agrees not to use Lincoln's name in connection with the sale of the Policies.

D. In no event shall reinsurance under this Agreement be in force with respect to a Policy unless the issuance and delivery of the Policy is in compliance with the laws of all applicable jurisdictions and WCL's corporate charter.

E. WCL agrees to maintain reinsurance of a Policy in force in accordance with the terms of this Agreement for as long as its Policy remains in force.

## Payments by WCL

A. WCL agrees to pay Lincoln premiums for reinsurance of a Policy equal to the appropriate rate specified in the Premium Schedule times the Reinsured Net Amount at Risk of the Policy.

B. The Premium Schedule specifies other monetary amounts which WCL agrees to take into account when calculating the amount due Lincoln.

C. Reinsurance premiums shall be due and payable as specified in the Administration Schedule.

D. The payment of reinsurance premiums shall be a condition precedent to the liability of Lincoln under this Agreement. If reinsurance premiums are not paid when due, Lincoln may give WCL thirty (30) days' written notice of its intent to terminate reinsurance because of WCL's failure to pay reinsurance premiums.  Reinsurance of all Policies having

970194sl.agm
117 / 32

CONFIDENTIAL                                    WCL- DL-0000139

reinsurance premiums in arrears shall terminate as of the date to which reinsurance premiums had previously been paid unless all premiums in arrears are paid before the end of the thirty (30) day notice period. If reinsurance on any Policy terminates because of WCL's failure to pay reinsurance premiums, reinsurance of Policies with premiums subsequently becoming due shall automatically terminate as of the date on which new reinsurance premiums become due.

E. So that Lincoln need not maintain deficiency reserves in connection with reinsurance premiums payable pursuant to this Agreement, the premium rates specified in the Premium Schedule shall only be guaranteed for one (1) Policy year. Nevertheless, Lincoln shall anticipate continuing to accept reinsurance on the basis of such rates for all Policies originally ceded pursuant to such rates.

### Payments by Lincoln

A. Lincoln agrees to pay WCL the Reinsured Net Amount at Risk of any claim paid by WCL pursuant to a Policy in accordance with the "Settlement of Claims" article.

B. Lincoln agrees to pay the Claims Ratio of any expenses incurred in connection with Policy claims except as set forth in the "Settlement of Claims" article.

C. The Premium Schedule specifies other monetary amounts that Lincoln agrees to pay WCL pursuant to this Agreement.

### Reinsurance Administration

The methods for placing reinsurance into effect, for paying reinsurance premiums, and for notifying Lincoln of Policy lapses, reinstatements, reductions, Continuations, increases in the Reinsured Net Amount at Risk; and of other changes affecting reinsurance shall be specified in the Administration Schedule.

### Settlement of Claims

A. WCL agrees to give Lincoln prompt written notice of its receipt of any claim on a Policy and to keep Lincoln informed of any legal proceedings or settlement negotiations in connection with a claim. Copies of written materials relating to such claim, legal proceedings or negotiation shall be furnished to Lincoln upon request.

CONFIDENTIAL

WCL- DL-0000140



B.  WCL's obligation to provide notice of a claim on a Policy shall not be construed as a condition precedent to Lincoln's obligation to pay the claim. WCL's failure to provide notice shall be considered a breach of a promise which may entitle Lincoln to damages.

C.  WCL agrees to act in accord with its standard practices applicable to all claims in enforcing the terms and conditions of the Policies and with respect to the administration, negotiation, payment, denial, or settlement of any claim or legal proceeding.

D.  Lincoln agrees to accept the good faith decision of WCL in payment or settlement of any claim for which Lincoln has received the required notice. Lincoln agrees to pay WCL the Reinsured Net Amount at Risk on which reinsurance premiums have been computed upon receiving proper evidence that WCL has paid a Policy claim. Payment of the Reinsured Net Amount at Risk on account of death shall be made in one lump sum.

E.  Lincoln's liability shall include indemnification of the Claims Ratio of any expenses incurred by WCL in defending or investigating a Policy claim with the exception of

   (1) salaries of employees or other internal expenses of WCL;

   (2) routine investigative or administrative expenses;

   (3) expenses incurred in connection with a dispute arising out of conflicting claims of entitlement to proceeds of a Policy that WCL admits are payable;

   (4) any gratuitous payments made by WCL; and

   (5) any punitive damages awarded against WCL, and expenses incurred in connection with such damages, that are based on the acts or omissions of WCL or its agents.

F.  Lincoln agrees to hold WCL harmless from certain expenses and liabilities that result from Lincoln's own acts or omissions as provided in this section. For this purpose, Lincoln agrees to indemnify WCL for Lincoln's equitable share of those punitive and exemplary damages awarded against WCL, and expenses incurred in connection with a claim for such damages, if (1) Lincoln actively participated in the acts or omissions, including the decision to deny a claim for Policy benefits, and (2) those acts or omissions serve as a material basis for the punitive or exemplary damages. Lincoln's equitable share shall be determined by

970194sl.agm
117 / 32

Page 6

CONFIDENTIAL

WCL- DL-0000141

an assessment of Lincoln's participation in the particular case.

G.  If WCL should contest or compromise any claim and the amount of WCL's liability is thereby reduced, Lincoln's liability shall be reduced by the Claims Ratio of the reduction.

H.  If WCL should recover monies from any third party in connection with or arising out of any Policy, WCL agrees to pay Lincoln the Claims Ratio of the recovery.

I.  If the amount of insurance provided by a Policy is increased or reduced because of a misstatement of age or sex, Lincoln's liability shall be increased or reduced by the Claims Ratio of the amount of the increase or reduction.

J.  If WCL pays interest on a claim, Lincoln agrees to pay the interest on the Reinsured Net Amount at Risk computed at the same rate and for the same period as that paid by WCL, but in no event later than the date the claim is finally adjudicated by WCL.

K.  If WCL is required to pay penalties and interest imposed automatically by statute, Lincoln shall indemnify WCL for the Claims Ratio of such penalties and interest.

**Reinstatements**

A.  If WCL reinstates a lapsed Policy in accordance with the terms of the Policy and WCL's underwriting rules and practices, Lincoln agrees to reinstate reinsurance of the Policy automatically unless Lincoln's offer to reinsure the Policy specifies that reinsurance of the Policy may only be reinstated as Facultative Reinsurance.

B.  If WCL collects premiums in arrears from the policyholder of a reinstated Policy, it agrees to pay Lincoln all corresponding reinsurance premiums in arrears in connection with the reinstatement, plus Lincoln's Proportionate Share of any interest received by WCL in connection with the reinstatement.

**Reductions in Insurance**

If individual life insurance on a life reinsured under this Agreement terminates, the Reinsurance Amount shall be reduced as specified in the Administration Schedule.

970194sl.agm
117 / 32

CONFIDENTIAL

WCL- DL-0000142

## Increases in Policy Net Amount at Risk

A.  If the Policy Net Amount at Risk on a Policy increases and the increase is subject to WCL's underwriting approval, the Reinsured Net Amount at Risk of the Policy shall only increase if the conditions of either the "Automatic Reinsurance" or "Facultative Reinsurance" articles are satisfied.

B.  If the Policy Net Amount at Risk on a Policy increases causing the Reinsured Net Amount at Risk to exceed the Reinsurance Amount, and the increase is not subject to WCL's underwriting approval, Lincoln agrees to accept a portion of such increases only if and as specified in a Increasing Policy Addendum.

## Changes in Retention

A.  If WCL increases its Retention on new Policies, it agrees to notify Lincoln in writing within sixty (60) days of such increase. The notice shall specify the new Retention and the Effective Date thereof.

B.  Whenever WCL increases its Retention on new Policies, it also agrees to indicate in its notice whether it wishes to (1) continue its previous retention on in force Policies or (2) increase its Retention on in force Policies and recapture reinsurance. If WCL elects (2), WCL's new Retention on an in force Policy shall be calculated using the insured's age, mortality class, Policy form, and country of residence at issue of the Policy.

C.  If WCL elects to increase its Retention on in force Policies pursuant to section B, its new Retention for such Policies shall become effective on the later of (1) the reinsurance renewal date of the Policy first following the effective date of its new Retention for new Policies and (2) the Policy anniversary date specified in the Administration Schedule. If WCL fails to initiate recapture of reinsurance within one hundred eighty (180) days of when the first of its Policies becomes eligible for recapture, its election to recapture reinsurance shall be considered waived.

D.  If an in force Policy is subject to a waiver of premium claim on the date the Policy qualifies for a new Retention, the new Retention shall nonetheless become effective on such date for purposes of life reinsurance.

9701941.sgm
117/32

CONFIDENTIAL

WCL- DL-0000143

E.   WCL may only elect to increase its Retention on in force Policies if
  (1) it maintained a Retention greater than $0 at the time the Policy was issued and retained its Retention at such time;
  (2) it increases its Retention on all eligible in force Policies; and
  (3) it retains the insurance recaptured from Lincoln at its own risk without benefit of any proportional or nonproportional reinsurance other than catastrophe accident reinsurance.

F.   Notwithstanding the preceding:
  (1) the recapture of the Reinsurance Amount shall be limited to Lincoln's portion of all reinsurance ceded by WCL on the Policy; and
  (2) if WCL gives notice of its intent to increase its Retention on in force Policies within five (5) years following a merger with another insurance company or the date it accepts the Policies by means of an assignment, the new Retention applicable to such Policies shall be limited to one hundred fifty percent (150%) of the original reinsured's pre-merger or pre-assignment Retention.

G.   For purposes of this article, Continuations shall be considered issued on the issue date of the original Policy.

**Assignment of Reinsurance**

If WCL sells, assumption reinsures or otherwise transfers the Policies to another insurer, it agrees to require that the other insurer assume all rights and obligations of WCL under this Agreement.  Lincoln may object to any such transfer that would result in a material adverse economic impact to Lincoln.  If Lincoln so objects, WCL and Lincoln agree to mutually calculate a termination charge that shall be paid by WCL to Lincoln upon the transfer and this Agreement shall be terminated with respect to all Policies transferred by WCL.

**Material Changes**

A.   WCL agrees to notify Lincoln in writing of any anticipated Material Change in any terms or conditions of the Policies, in WCL's underwriting rules and practices applicable to the Policies or in WCL's claims practices and procedures.

970194sl.agm
117 / 32

CONFIDENTIAL

WCL- DL-0000144



B.  In the event of a Material Change to the Policies, to WCL's underwriting rules and practices or to its claims practices and procedures, Lincoln may at its option
   (1) continue to reinsure the Policies under current terms;
   (2) reinsure Policies under modified terms to reflect the Material Change; or
   (3) consider future Policies as issued in a Policy form that is not reinsured under this Agreement.

**Errors**

A.  Any Error by either WCL or Lincoln in the administration of reinsurance under this Agreement shall be corrected by restoring both WCL and Lincoln to the positions they would have occupied had no Error occurred. Any monetary adjustments made between WCL and Lincoln to correct an Error shall be without interest.

B.  When a party claims that an Error should be corrected pursuant to section A, that party agrees to investigate whether other instances of the Error have also occurred and agrees to report its findings to the other party.

**Audits of Records and Procedures**

A.  Lincoln or WCL may audit, at any reasonable time and at its own expense, all records and procedures relating to reinsurance under this Agreement. The party being audited agrees to cooperate in the audit, including providing any information requested by the other in advance of the audit.

B.  Upon request, WCL agrees to furnish Lincoln with copies of any underwriting information in WCL's files pertaining to a Policy.

**Arbitration**

A.  If WCL and Lincoln cannot mutually resolve a dispute that arises out of or relates to this Agreement, the dispute shall be decided through arbitration as specified in the Arbitration Schedule. The arbitrators shall base their decision on the terms and conditions of this Agreement plus, as necessary, on the customs and practices of the insurance and reinsurance industry rather than solely on a strict interpretation of applicable law. There shall be no appeal from their decision, except that either party may petition a court having jurisdiction over the parties and the subject matter to reduce the arbitrators' decision to judgement.

CONFIDENTIAL

WCL- DL-0000145

B.   The parties intend this article to be enforceable in accordance with the Federal Arbitration Act (9 U.S.C. §§1 et seq.), including any amendments to that Act which are subsequently adopted.  If either party refuses to submit to arbitration as required by section A, the other party may request a United States Federal District Court to compel arbitration in accordance with the Federal Arbitration Act. Both parties consent to the jurisdiction of such court to enforce this article and to confirm and enforce the performance of any award of the arbitrators.

## Insolvency of WCL

A.   In the event of the insolvency of WCL and the appointment of a conservator, liquidator or statutory successor of WCL, reinsurance shall be payable immediately upon demand to such conservator, liquidator or statutory successor on the basis of claims allowed against WCL by any court of competent jurisdiction or by the conservator, liquidator or statutory successor of WCL without diminution because of the insolvency of WCL or because such conservator, liquidator or statutory successor has failed to pay all or a portion of any claims.

B.   In the event of the insolvency of WCL, the conservator, liquidator or other statutory successor of WCL agrees to give Lincoln written notice of the pendency of a claim on a Policy within a reasonable time after such claim is filed in the insolvency proceeding.  During the pendency of any such claim, Lincoln may investigate the claim and interpose in the proceeding where such claim is to be adjudicated in the name of WCL (its conservator, liquidator or statutory successor), but at its own expense, any defense or defenses which Lincoln may deem available to WCL or its conservator, liquidator, or statutory successor.

C.   A percentage (calculated as 1 minus the Claims Ratio) of the expense thus incurred by Lincoln shall be charged, subject to court approval, against WCL as part of the expense of liquidation.

## Offset

Any debts or credits, matured or unmatured, liquidated or unliquidated, regardless of when they arose or were incurred, in favor of or against either WCL or Lincoln with respect to this Agreement or any other reinsurance agreement between the parties, shall be offset and only the balance allowed or paid.  If either WCL or Lincoln is then

970194sl.agm
117/32

Page 11

WCL- DL-0000146

under formal insolvency proceedings, this right of offset shall be subject to the laws of the state exercising primary jurisdiction over such proceedings.

## Parties to the Agreement

This is an Agreement for indemnity reinsurance solely between WCL and Lincoln. The acceptance of reinsurance under this Agreement shall not create any right or legal relation whatever between Lincoln and an insured, policyholder, beneficiary, or any other party to or under any Policy.

## Commencement and Termination

A. This Agreement shall be effective as of the date set forth on the cover page.
B. Either WCL or Lincoln may terminate this Agreement for new reinsurance by giving ninety (90) days' written notice to the other party. In such case, WCL agrees to continue to cede, and Lincoln agrees to continue to accept, reinsurance in accordance with this Agreement of Policies issued prior to the expiration of the ninety (90) day period. All reinsurance that has been placed in effect prior to such date shall remain in effect in accordance with the terms of this Agreement, until the earlier of (1) the termination or expiration of the Policy and (2) the termination of this Agreement pursuant to sections C or D below.
C. Reinsurance of a Policy shall terminate as of the reinsurance premium renewal date on which the Reinsured Net Amount at Risk for such Policy is less than the automatic termination amount specified in the Administration Schedule, provided the reinsurance has been in force for the period specified in the Administration Schedule.
D. Lincoln may terminate all reinsurance under this Agreement in accordance with section D of the "Payments by WCL" article if WCL fails to pay reinsurance premiums when due.

## Entire Agreement

A. This Agreement represents the entire agreement between WCL and Lincoln and supersedes any prior oral or written agreements between the parties regarding its subject matter.
B. No modification of this Agreement shall be effective unless set forth in a written amendment executed by both parties.

970194sl.agm
117 / 32

Page 12

CONFIDENTIAL                                                        WCL- DL-0000147

C.   A waiver of a right created by this Agreement shall constitute a waiver only with respect to the particular circumstance for which it is given and not a waiver in any future circumstance.

## Deferred Acquisition Cost Tax Election

A.   Lincoln and WCL each acknowledge that it is subject to taxation under Subchapter "L" of the Internal Revenue Code of 1986 (the "Code").

B.   With respect to this Agreement, Lincoln and WCL agree to the following pursuant to Section 1.848-2(g)(8) of the Income Tax Regulations issued December 1992, whereby:

(1) Each party agrees to attach a schedule to its federal income tax return which identifies this Agreement for which the joint election under the Regulation has been made;

(2) The party with net positive consideration, as defined in the Regulation promulgated under Code Section 848, for this Agreement for each taxable year, agrees to capitalize specified Policy acquisition expenses with respect to this Agreement without regard to the general deductions limitation of Section 848(c)(1);

(3) Each party agrees to exchange information pertaining to the amount of net consideration under this Agreement each year to ensure consistency; and

(4) This election shall be effective for the year that this Agreement was entered into and for all subsequent years that this Agreement remains in effect.

## Definitions

A.   **Automatic Limit** - the amount specified in the Life Benefits Schedule used to calculate the maximum Reinsurance Amount that may be ceded as Automatic Reinsurance.

B.   **Automatic Reinsurance** - reinsurance satisfying certain conditions relating to the reinsurance as specified in the Agreement that is ceded to Lincoln without obtaining a specific offer to reinsure from Lincoln.

C.   **Claims Ratio** - the Reinsured Net Amount at Risk on which reinsurance premiums have been computed divided by the Policy Net Amount at Risk calculated as of the date of the last premium payment.

CONFIDENTIAL



D. **Continuation** - a new Policy replacing a Policy or a change in an existing Policy issued or made either (1) in compliance with the terms of the Policy or (2) without (a) the same new underwriting information WCL would obtain in the absence of the Policy, (b) a suicide exclusion or contestable period as long as those contained in other new issues of Policies, or (c) the payment of the same commissions in the first year that WCL would have paid in the absence of the original Policy.

E. **Effective Date** - the date specified on the cover page on which this Agreement becomes binding on WCL and Lincoln.

F. **Error** - any isolated deviation from the terms of this Agreement resulting from the act or omission of an employee of either WCL or Lincoln whose principal function relates to the administration of reinsurance, whether such deviation results from inadvertence or a mistake in judgment. "Error" shall not include any failure to comply with the terms of an offer of Facultative Reinsurance or any negligent or deliberate deviation from the terms of this Agreement.

G. **Facultative Reinsurance** - reinsurance that is ceded to Lincoln only after WCL has obtained and accepted a specific offer to reinsure made by Lincoln. Such reinsurance may be ceded to Lincoln only upon the terms specified by Lincoln in its offer to reinsure and the terms of this Agreement that do not conflict with the specific offer to reinsure.

H. **Lincoln's Proportionate Share** - the Reinsurance Amount divided by the death benefit of a Policy as of the date of issue or as of the date of a subsequent change to the Policy that affects the Reinsurance Amount.

I. **Material Change** - a change that a prudent insurance or reinsurance executive would consider as likely to impact upon a party's financial experience under this Agreement.

J. **Participation Limit** - the amount specified in the Life Benefits Schedule used as a condition for ceding Automatic Reinsurance.

K. **Policy** - an individual life insurance contract issued by WCL on any of the Policy forms specified in the Life Benefits Schedule. A "Policy" shall include any attached riders and endorsements specified in the Life Benefits Schedule or any Addendum to this Agreement.

970194sl.agm
117/32

Page 14

CONFIDENTIAL

WCL- DL-0000149



L.  **Policy Net Amount at Risk** - on the reinsurance premium renewal date, the death benefit of a Policy less either the terminal reserve or, in the case of interest sensitive Policies, the accumulation account or cash value on the Policy, such difference taken to the nearest dollar. The terminal reserve or cash value shall be disregarded if a Policy is on either a level term plan of twenty years or less or on a decreasing term plan. The basis for determining the Policy Net Amount at Risk may be modified with the consent of both WCL and Lincoln without the need for a formal amendment of this Agreement.

M.  **Reinsurance Amount** - the Policy death benefit at issue less any accumulative value, if applicable, less the Retention on the Policy times the percentage of Automatic Reinsurance ceded to Lincoln as specified in the Life Benefits Schedule. For Facultative Reinsurance, the "Reinsurance Amount" is that amount of the Policy death benefit at issue for which WCL accepts Lincoln's offer to reinsure.

N.  **Reinsured Net Amount at Risk** - Lincoln's Proportionate Share times the Policy Net Amount at Risk.

O.  **Retention** - the amount specified in the Life Benefits Schedule that is held by WCL at its own risk on a life without the benefit of proportional reinsurance. In calculating the Retention, the sum retained by WCL on the life and in force as of the date of issue of the Policy shall be taken into account.

P.  **Ultimate Amount** - the projected maximum Policy Net Amount at Risk that a Policy could achieve based on reasonable assumptions made about the operation of certain characteristics of the Policy form.

**Execution**

WCL and Lincoln, by their respective officers, executed this Agreement in duplicate on the dates shown below. As of the Effective Date, this Agreement consists of:

- this Yearly Renewable Term Reinsurance Agreement numbered 32;
- a Life Benefits Schedule;
- an Administration Schedule;
- a Premium Schedule;
- an Arbitration Schedule;
- a Waiver of Premium Benefit Addendum; and
- a Premium Receipt Addendum.

970194sl.agm
117 / 32

CONFIDENTIAL                                                                                 WCL- DL-0000150

WEST COAST LIFE INSURANCE COMPANY

Signed at _SAN FRANCISCO_

By _~~signature~~_      A. MANJI

Title _Sr. V.P. & Actuary_

Date _SEPT. 18, 97_

By _Dale Moon_

Title _Sr. V.P. Insurance Operations_

Date _18 Sept 97_

THE LINCOLN NATIONAL LIFE INSURANCE COMPANY

Signed at Fort Wayne, Indiana

By _~~signature~~_

~~Senior~~ ~~Second~~ Vice President

Date _SEPTEMBER 16, 1997_

By _Elena Giles_

Assistant Secretary

Date _September 16, 1997_

CONFIDENTIAL      WCL- DL-0000151

[Appendices and attachments omitted from Exhibit]

# ARBITRATION SCHEDULE

(Effective as of October 15, 1996)

to

Agreement Number 32

To initiate arbitration, either WCL or Lincoln agrees to notify the other party in writing of its desire to arbitrate, stating the nature of its dispute and the remedy sought. The party to which the notice is sent agrees to respond in writing to the notification within ten (10) days of its receipt.

The arbitration hearing shall be held before a panel of three (3) arbitrators, each of whom must be a present or former officer of a life insurance company. An arbitrator may not be a present or former officer, attorney, or consultant of WCL or Lincoln, or either's affiliates.

WCL and Lincoln agree to each name five (5) candidates to serve as an arbitrator. Each agree to choose one (1) candidate from the other's list, and these two (2) candidates shall serve as the first two (2) arbitrators. If one (1) or more candidates so chosen decline to serve as an arbitrator, the party that named the candidate shall add an additional candidate to its list, and the other party agrees to again choose one (1) candidate from the list. This process shall continue until two (2) arbitrators have been chosen and have accepted. WCL and Lincoln agree to present their initial lists of five (5) candidates by written notification to the other party within twenty-five (25) days of the date of the mailing of the notification initiating the arbitration. Any subsequent additions to the list which are required shall be presented within ten (10) days of the date the naming party receives notice that a candidate who has been chosen declines to serve.

The two (2) arbitrators shall select the third arbitrator from the eight (8) candidates remaining on the lists of WCL and Lincoln within fourteen (14) days of the acceptance of their positions as arbitrators. If the two (2) arbitrators cannot agree on the choice of a third, then this choice shall be referred back to WCL and Lincoln. WCL and Lincoln agree to take turns striking the names of the remaining candidates from the initial eight (8) candidates until only one (1) candidate remains. If the candidate so chosen shall decline to serve as the third arbitrator, the candidate whose name was stricken last shall be nominated as third arbitrator. This process shall continue until a candidate has been chosen and accepted. This candidate shall serve as the third arbitrator. The first turn at striking the name of a candidate shall belong to the party that is responding to the other party's initiation of arbitration. Once chosen, the arbitrators are empowered to decide all substantive and procedural issues by a majority of votes.

CONFIDENTIAL                                                                 WCL- DL-0000171

It is agreed that each of the three (3) arbitrators should be impartial regarding the dispute and should resolve the dispute on the basis described in the "Arbitration" article. At no time shall either WCL or Lincoln contact or otherwise communicate with any person who is to be or has been designated as a candidate to serve as an arbitrator concerning the dispute, except upon the basis of jointly drafted communications provided by both WCL and Lincoln to inform those candidates actually chosen as arbitrators of the nature and facts of the dispute. Likewise, any written or oral arguments provided to the arbitrators concerning the dispute shall be coordinated with the other party and shall be provided simultaneously to the other party or shall take place in the presence of the other party. Further, at no time shall any arbitrator be informed that he or she has been named or chosen by one party or the other.

The arbitration hearing shall be held on the date and in the location set by the arbitrators. In no event shall this date be later than six (6) months after the appointment of the third arbitrator. As soon as possible, the arbitrators shall establish prearbitration procedures as warranted by the facts and issues of the particular case. At least ten (10) days prior to the arbitration hearing, each party agrees to provide the other party and the arbitrators with a detailed statement of the facts and arguments it will present at the arbitration hearing. The arbitrators may consider any relevant evidence and agree to give the evidence such weight as they deem appropriate after consideration of any objections raised concerning it. The party initiating the arbitration shall have the burden of proving its case by a preponderance of the evidence. Each party may examine any witnesses who testify at the arbitration hearing. Within twenty (20) days after the end of the arbitration hearing, the arbitrators shall issue a written decision that sets forth their findings and any award to be paid as a result of the arbitration, except that the arbitrators may not award punitive or exemplary damages. In their decision, the arbitrators shall apportion the costs of arbitration, which shall include, but not be limited to, their own fees and expenses.

CONFIDENTIAL

WCL- DL-0000172

[Appendices and attachments omitted from Exhibit]

# EXHIBIT 2

# YEARLY RENEWABLE TERM REINSURANCE AGREEMENT

**Effective as of April 1, 1998,**

**between**

**WEST COAST LIFE INSURANCE COMPANY**
**of**
**San Francisco, California,**

**referred to in this Agreement as "WCL," and**

**THE LINCOLN NATIONAL LIFE INSURANCE COMPANY**
**of**
**Fort Wayne, Indiana,**

**referred to in this Agreement as "Lincoln."**

| | |
|---|---|
| Inspected By | *ElG* |
| Date | *12/1/98* |
| Doc | 981237sl.agm |
| CCN/Agmt. No. | 117 / 40 |

# TABLE OF CONTENTS

Reinsurance Coverage                                          1
Automatic Reinsurance                                        1
Facultative Reinsurance                                      2
Continuations                                                3
Terms of Reinsurance                                         4
Payments by WCL                                              5
Payments by Lincoln                                          5
Reinsurance Administration                                   5
Settlement of Claims                                         5
Reinstatements                                               7
Reductions in Insurance                                      7
Increases in Policy Net Amount at Risk                       7
Changes in Retention                                         8
Assignment of Reinsurance                                    9
Material Changes                                             9
Errors                                                       10
Audits of Records and Procedures                             10
Arbitration                                                  10
Insolvency of WCL                                            11
Offset                                                       11
Parties to the Agreement                                     11
Commencement and Termination                                 12
Entire Agreement                                             12
Deferred Acquisition Cost Tax Election                       12
Definitions                                                  13
Execution                                                    15

LIFE BENEFITS SCHEDULE                                       17
ADMINISTRATION SCHEDULE                                      19
PREMIUM SCHEDULE                                             22
ARBITRATION SCHEDULE                                         27
PREMIUM RECEIPT ADDENDUM                                     29
LAST SURVIVOR ADDENDUM                                       30
POLICY SPLIT ADDENDUM                                        32

## Reinsurance Coverage

A. WCL agrees to cede, and Lincoln agrees to accept, reinsurance of the Policies specified in the Life Benefits Schedule. (The term "Policies" and certain other terms used in this Agreement are defined in the "Definitions" article.)

B. The death benefits provided by the Policies are reinsured. Supplemental benefits are reinsured if and as specified in applicable Addenda.

C. WCL agrees to either
    (1) cede reinsurance of a Policy to Lincoln as Automatic Reinsurance;
    (2) submit the Policy to Lincoln for consideration as Facultative Reinsurance; or
    (3) cede reinsurance of a Policy as a Continuation.

## Automatic Reinsurance

A. WCL agrees to cede the Reinsurance Amount of a Policy as Automatic Reinsurance if the following conditions are met:
    (1) It retains its Retention on the insured life when the Policy is issued;
    (2) It underwrites and issues the Policy in accordance with its normal individual life insurance underwriting rules and practices previously disclosed to Lincoln;
    (3) The sum of (a) and (b) does not exceed the sum of its Retention and the Automatic Limit, where
        (a) equals the amount of individual life insurance issued by WCL then in force on the insured life, or in the case of individual life insurance with increasing death benefits, the Ultimate Amount of such Policies; and
        (b) equals the amount of life insurance currently being applied for from WCL, or in the case of individual life insurance with increasing death benefits, the Ultimate Amount;
    (4) The sum of (a) and (b) does not exceed the Participation Limit, where
        (a) equals the amount of individual life insurance then in force on the insured life in all companies, or in the case of individual life insurance with increasing death

                                    benefits, the Ultimate Amount of such Policies; and

    (b) equals the amount currently applied for on the insured life from all companies, or in the case of individual life insurance with increasing death benefits, the Ultimate Amounts;

    (5) It has not submitted a facultative application to Lincoln or any other insurance or reinsurance company for reinsurance of the current application; and

    (6) The Policy is not a Continuation.

B. Policies issued pursuant to any special underwriting program adopted by WCL may be ceded as Automatic Reinsurance only with Lincoln's consent to reinsure such Policies.

C. A Policy shall not be ceded as Automatic Reinsurance if the Reinsurance Amount of the Policy is less than the minimum cession amount specified in the Administration Schedule.

## Facultative Reinsurance

A. WCL agrees to submit Policies not satisfying the conditions for Automatic Reinsurance, and Policies which it does not wish to cede as Automatic Reinsurance, for consideration by Lincoln as Facultative Reinsurance. WCL may also submit for consideration as Facultative Reinsurance any individual life insurance issued on a Policy form that is not specified in the Life Benefits Schedule provided reinsurance terms and conditions are established and agreed upon by means of the Facultative Reinsurance application process.

B. An application for Facultative Reinsurance shall be made in the manner set forth in the Administration Schedule. Copies of all information which WCL has pertaining to the insurability of the proposed insured, including written summaries of any such information which cannot be copied, shall accompany the application.

C. Upon receipt of an application, Lincoln agrees to promptly examine the underwriting information and communicate

    (1) an offer to reinsure the Policy as applied for;

    (2) an offer to reinsure the Policy other than as applied for;

                    (3) an offer to reinsure the Policy subject to the satisfaction of additional underwriting requirements;

                    (4) a request for additional underwriting information; or

                    (5) its unwillingness to make an offer to reinsure the Policy.

D.    To accept an offer to reinsure made by Lincoln, WCL agrees to

                    (1) satisfy any conditions stated in the offer to reinsure; and

                    (2) follow the procedure for placing reinsurance into effect as specified in the Administration Schedule.

E.    WCL agrees to inform Lincoln immediately of any additional information pertaining to the insurability of a proposed insured which is brought to WCL's attention before the completion of the procedures for accepting Lincoln's offer to reinsure. Upon its receipt of such information, Lincoln may withdraw or modify its earlier offer to reinsure.

F.    The terms of an offer to reinsure shall supercede the terms of this Agreement to the extent of any conflicts between the parties. Otherwise, reinsurance of a Policy ceded as Facultative Reinsurance shall be in accordance with the terms of this Agreement.

**Continuations**

A.    If WCL issues a Continuation of a Policy within its normal continuation rules and practices, it agrees to reinsure the Continuation with Lincoln. Reinsurance shall continue

                    (1) under the reinsurance agreement between WCL and Lincoln which provides reinsurance of the Policy form of the Continuation; or

                    (2) under this Agreement if there is no such agreement.

B.    A Policy which is a Continuation of a Policy that was not previously reinsured with Lincoln may only be reinsured under this Agreement with the written consent of Lincoln and the original reinsurer.

C.    If the original Policy was ceded to Lincoln as Facultative Reinsurance and WCL approves an increase in the face amount of the Continuation based upon receipt of any new information pertaining to the insurability of the proposed insured, WCL agrees to submit the Continuation to Lincoln for consideration as Facultative Reinsurance. In such case,

Lincoln shall only be bound to reinsure the Continuation in accordance with its offer to reinsure the Continuation.

D.  Reinsurance at issue of the Continuation shall not exceed the Reinsured Net Amount at Risk of the original Policy immediately prior to the issuance of the Continuation.

E.  Premiums payable for reinsurance of a Continuation shall be calculated using the rate schedule applicable to the Policy form of the Continuation as specified in the Premium Schedule.  If there is no rate schedule applicable to the Policy form of the Continuation, reinsurance premiums shall be payable using the rate schedule applicable to the original Policy.

F.  If the Continuation results in a change in the life status of the insured risk from a single-insured plan to a joint- or multiple-insured plan, Lincoln must consent to the Continuation.

**Terms of Reinsurance**

A.  The plan of reinsurance shall be yearly renewable term reinsurance of the Reinsured Net Amount at Risk of a Policy.

B.  Reinsurance of a Policy shall commence on the Policy date, except

  (1) in the case of Facultative Reinsurance, reinsurance shall commence on the Policy date only if Lincoln's offer to reinsure is the best offer of reinsurance received by WCL as determined by WCL's published reinsurance placement rules in effect as of such date; and

  (2) if a premium receipt is issued by WCL in connection with an application for the Policy, reinsurance shall commence prior to the Policy date only if and as specified in a Premium Receipt Addendum.

C.  WCL agrees not to use Lincoln's name in connection with the sale of the Policies.

D.  In no event shall reinsurance under this Agreement be in force with respect to a Policy unless the issuance and delivery of the Policy is in compliance with the laws of all applicable jurisdictions and WCL's corporate charter.

E.  WCL agrees to maintain reinsurance of a Policy in force in accordance with the terms of this Agreement for as long as its Policy remains in force.

**Payments by WCL**

A. WCL agrees to pay Lincoln premiums for reinsurance of a Policy equal to the appropriate rate specified in the Premium Schedule times the Reinsured Net Amount at Risk of the Policy.

B. The Premium Schedule specifies other monetary amounts which WCL agrees to take into account when calculating the amount due Lincoln.

C. Reinsurance premiums shall be due and payable as specified in the Administration Schedule.

D. So that Lincoln need not maintain deficiency reserves in connection with reinsurance premiums payable pursuant to this Agreement, the premium rates specified in the Premium Schedule shall only be guaranteed for one (1) Policy year. Nevertheless, Lincoln shall anticipate continuing to accept reinsurance on the basis of such rates for all Policies originally ceded pursuant to such rates.

**Payments by Lincoln**

A. Lincoln agrees to pay WCL the Reinsured Net Amount at Risk of any claim paid by WCL pursuant to a Policy in accordance with the "Settlement of Claims" article.

B. Lincoln agrees to pay the Claims Ratio of any expenses incurred in connection with Policy claims except as set forth in the "Settlement of Claims" article.

C. The Premium Schedule specifies other monetary amounts that Lincoln agrees to pay WCL pursuant to this Agreement.

**Reinsurance Administration**

The methods for placing reinsurance into effect, for paying reinsurance premiums, and for notifying Lincoln of Policy lapses, reinstatements, reductions, Continuations, increases in the Reinsured Net Amount at Risk; and of other changes affecting reinsurance shall be specified in the Administration Schedule.

**Settlement of Claims**

A. WCL agrees to give Lincoln prompt written notice of its receipt of any claim on a Policy and to keep Lincoln informed of any legal proceedings or settlement negotiations in connection with a claim. Copies of written materials relating to such claim, legal proceedings or negotiation shall be furnished to Lincoln upon request.

B. WCL's obligation to provide notice of a claim on a Policy shall not be construed as a condition precedent to Lincoln's obligation to pay the claim. WCL's failure to provide notice

981237aLagm
117 / 40

shall be considered a breach of a promise which may entitle Lincoln to damages.

C.   WCL agrees to act in accord with its standard practices applicable to all claims in enforcing the terms and conditions of the Policies and with respect to the administration, negotiation, payment, denial or settlement of any claim or legal proceeding.

D.   Lincoln agrees to accept the good faith decision of WCL in payment or settlement of any claim for which Lincoln has received the required notice.  Lincoln agrees to pay WCL the Reinsured Net Amount at Risk on which reinsurance premiums have been computed upon receiving proper evidence that WCL has paid a Policy claim.  Payment of the Reinsured Net Amount at Risk on account of death shall be made in one (1) lump sum.

E.   Lincoln's liability shall include indemnification of the Claims Ratio of any expenses incurred by WCL in defending or investigating a Policy claim with the exception of

   (1) salaries of employees or other internal expenses of WCL;
   (2) routine investigative or administrative expenses;
   (3) expenses incurred in connection with a dispute arising out of conflicting claims of entitlement to proceeds of a Policy that WCL admits are payable;
   (4) any gratuitous payments made by WCL; and
   (5) any punitive damages awarded against WCL, and expenses incurred in connection with such damages, that are based on the acts or omissions of WCL or its agents.

F.   Lincoln agrees to hold WCL harmless from certain expenses and liabilities that result from Lincoln's own acts or omissions as provided in this article.  For this purpose, Lincoln agrees to indemnify WCL for Lincoln's equitable share of those punitive and exemplary damages awarded against WCL, and expenses incurred in connection with a claim for such damages, if

   (1) Lincoln actively participated in the acts or omissions, including the decision to deny a claim for Policy benefits; and
   (2) those acts or omissions serve as a material basis for the punitive or exemplary damages.

Lincoln's equitable share shall be determined by an assessment of Lincoln's participation in the particular case.

G. If WCL should contest or compromise any claim and the amount of WCL's liability is thereby reduced, Lincoln's liability shall be reduced by the Claims Ratio of the reduction.

H. If WCL should recover monies from any third party in connection with or arising out of any Policy, WCL agrees to pay Lincoln the Claims Ratio of the recovery.

I. If the amount of insurance provided by a Policy is increased or reduced because of a misstatement of age or sex, Lincoln's liability shall be increased or reduced by the Claims Ratio of the amount of the increase or reduction.

J. If WCL pays interest on a claim, Lincoln agrees to pay the interest on the Reinsured Net Amount at Risk computed at the same rate and for the same period as that paid by WCL, but in no event later than the date the claim is finally adjudicated by WCL.

K. If WCL is required to pay penalties and interest imposed automatically by statute, Lincoln shall indemnify WCL for the Claims Ratio of such penalties and interest.

**Reinstatements**

A. If WCL reinstates a lapsed Policy in accordance with the terms of the Policy and WCL's underwriting rules and practices, Lincoln agrees to reinstate reinsurance of the Policy automatically unless Lincoln's offer to reinsure the Policy specifies that reinsurance of the Policy may only be reinstated as Facultative Reinsurance.

B. If WCL collects premiums in arrears from the policyholder of a reinstated Policy, it agrees to pay Lincoln all corresponding reinsurance premiums in arrears in connection with the reinstatement, plus Lincoln's Proportionate Share of any interest received by WCL in connection with the reinstatement.

**Reductions in Insurance**

If individual life insurance on a life reinsured under this Agreement terminates, the Reinsurance Amount shall be reduced as specified in the Administration Schedule.

**Increases in Policy Net Amount at Risk**

A. If the Policy Net Amount at Risk on a Policy increases and the increase is subject to WCL's underwriting approval, the Reinsured Net Amount at Risk of the Policy shall only increase if the conditions of either the "Automatic Reinsurance" or "Facultative Reinsurance" articles are satisfied.

B.  If the Policy Net Amount at Risk on a Policy increases causing the Reinsured Net Amount at Risk to exceed the Reinsurance Amount, and the increase is not subject to WCL's underwriting approval, Lincoln agrees to accept a portion of such increases only if and as specified in an Increasing Policy Addendum.

**Changes in Retention**

A.  If WCL increases its Retention on new Policies, it agrees to notify Lincoln in writing within sixty (60) days of such increase. The notice shall specify the new Retention and the effective date thereof.

B.  Whenever WCL increases its Retention on new Policies, it also agrees to indicate in its notice whether it wishes to

    (1) continue its previous Retention on in force Policies; or

    (2) increase its Retention on in force Policies and recapture reinsurance.

If WCL elects (2), WCL's new Retention on an in force Policy shall be calculated using the insured's age, mortality class, Policy form and country of residence at issue of the Policy.

C.  If WCL elects to increase its Retention on in force Policies pursuant to paragraph B, its new Retention for such Policies shall become effective on the later of

    (1) the reinsurance renewal date of the Policy first following the effective date of its new Retention for new Policies; and

    (2) the Policy anniversary date specified in the Administration Schedule.

If WCL fails to initiate recapture of reinsurance within one hundred eighty (180) days of when the first of its Policies becomes eligible for recapture, its election to recapture reinsurance shall be considered waived.

D.  If an in force Policy is subject to a waiver of premium claim on the date the Policy qualifies for a new Retention, the new Retention shall nonetheless become effective on such date for purposes of life reinsurance.

E.  WCL may only elect to increase its Retention on in force Policies if

    (1) it maintained a Retention greater than zero dollars ($0) at the time the Policy was issued and retained its Retention at such time;

    (2) it increases its Retention on all eligible in force Policies; and

(3) it retains the insurance recaptured from Lincoln at its own risk without benefit of any proportional or nonproportional reinsurance other than catastrophe accident reinsurance.

F. Notwithstanding the preceding,

(1) the recapture of the Reinsurance Amount shall be limited to Lincoln's portion of all reinsurance ceded by WCL on the Policy; and

(2) if WCL gives notice of its intent to increase its Retention on in force Policies within five (5) years following a merger with another insurance company or the date it accepts the Policies by means of an assignment, the new Retention applicable to such Policies shall be limited to one hundred fifty percent (150%) of the original reinsured's pre-merger or pre-assignment Retention.

G. For purposes of this article, Continuations shall be considered issued on the issue date of the original Policy.

## Assignment of Reinsurance

If WCL sells, assumption reinsures or otherwise transfers the Policies to another insurer, it agrees to require that the other insurer assume all rights and obligations of WCL under this Agreement.  Lincoln may object to any such transfer that would result in a material adverse economic impact to Lincoln.  If Lincoln so objects, WCL and Lincoln agree to mutually calculate a termination charge that shall be paid by WCL to Lincoln upon the transfer and this Agreement shall be terminated with respect to all Policies transferred by WCL.

## Material Changes

A. WCL agrees to notify Lincoln in writing of any anticipated Material Change in any terms or conditions of the Policies, in WCL's underwriting rules and practices applicable to the Policies or in WCL's claims practices and procedures.

B. In the event of a Material Change to the Policies, to WCL's underwriting rules and practices or to its claims practices and procedures, Lincoln may at its option

(1) continue to reinsure the Policies under current terms;

(2) reinsure Policies under modified terms to reflect the Material Change; or

(3) consider future Policies as issued in a Policy form that is not reinsured under this Agreement.

**Errors**

A. Any Error by either WCL or Lincoln in the administration of reinsurance under this Agreement shall be corrected by restoring both WCL and Lincoln to the positions they would have occupied had no Error occurred. Any monetary adjustments made between WCL and Lincoln to correct an Error shall be without interest.

B. When a party claims that an Error should be corrected pursuant to paragraph A, that party agrees to investigate whether other instances of the Error have also occurred and agrees to report its findings to the other party.

**Audits of Records and Procedures**

A. Lincoln or WCL may audit, at any reasonable time and at its own expense, all records and procedures relating to reinsurance under this Agreement. The party being audited agrees to cooperate in the audit, including providing any information requested by the other in advance of the audit.

B. Upon request, WCL agrees to furnish Lincoln with copies of any underwriting information in WCL's files pertaining to a Policy.

**Arbitration**

A. If WCL and Lincoln cannot mutually resolve a dispute that arises out of or relates to this Agreement, the dispute shall be decided through arbitration as specified in the Arbitration Schedule. The arbitrators shall base their decision on the terms and conditions of this Agreement plus, as necessary, on the customs and practices of the insurance and reinsurance industry rather than solely on a strict interpretation of applicable law. There shall be no appeal from their decision, except that either party may petition a court having jurisdiction over the parties and the subject matter to reduce the arbitrators' decision to judgement.

B. The parties intend this article to be enforceable in accordance with the Federal Arbitration Act (9 U.S.C. §§1 et seq.), including any amendments to that Act which are subsequently adopted. If either party refuses to submit to arbitration as required by paragraph A, the other party may request a United States Federal District Court to compel arbitration in accordance with the Federal Arbitration Act. Both parties consent to the jurisdiction of such court to enforce this article and to confirm and enforce the performance of any award of the arbitrators.

**Insolvency of WCL**

A. In the event of the insolvency of WCL and the appointment of a conservator, liquidator or statutory successor of WCL, reinsurance shall be payable to such conservator, liquidator or statutory successor on the basis of claims allowed against WCL by any court of competent jurisdiction or by the conservator, liquidator or statutory successor of WCL without diminution because of the insolvency of WCL or because such conservator, liquidator or statutory successor has failed to pay all or a portion of any claims.

B. In the event of the insolvency of WCL, the conservator, liquidator or other statutory successor of WCL agrees to give Lincoln written notice of the pendency of a claim on a Policy within a reasonable time after such claim is filed in the insolvency proceeding.   During the pendency of any such claim, Lincoln may investigate the claim and interpose in the proceeding where such claim is to be adjudicated in the name of WCL (its conservator, liquidator or statutory successor), but at its own expense, any defense or defenses which Lincoln may deem available to WCL or its conservator, liquidator or statutory successor.

C. A percentage (calculated as one (1) minus the Claims Ratio) of the expense thus incurred by Lincoln shall be charged, subject to court approval, against WCL as part of the expense of liquidation.

**Offset**

Any debts or credits, matured or unmatured, liquidated or unliquidated, regardless of when they arose or were incurred, in favor of or against either WCL or Lincoln with respect to this Agreement or any other reinsurance agreement between the parties, shall be offset and only the balance allowed or paid.  If either WCL or Lincoln is then under formal insolvency proceedings, this right of offset shall be subject to the laws of the state exercising primary jurisdiction over such proceedings.

**Parties to the Agreement**

This is an Agreement for indemnity reinsurance solely between WCL and Lincoln.  The acceptance of reinsurance under this Agreement shall not create any right or legal relation whatever between Lincoln and an insured, policyholder, beneficiary or any other party to or under any Policy.

**Commencement and Termination**

A. This Agreement shall be effective as of the date set forth on the cover page, except that WCL may issue a Policy dated as much as six (6) months prior to the Effective Date in order to save age of the applicant.

B. Either WCL or Lincoln may terminate this Agreement for new reinsurance by giving ninety (90) days' written notice to the other party. In such case, WCL agrees to continue to cede, and Lincoln agrees to continue to accept, reinsurance in accordance with this Agreement of Policies issued prior to the expiration of the ninety (90) day period. All reinsurance that has been placed in effect prior to such date shall remain in effect in accordance with the terms of this Agreement, until the earlier of
   (1) the termination or expiration of the Policy; and
   (2) the termination of this Agreement pursuant to paragraphs C or D below.

C. Reinsurance of a Policy shall terminate as of the reinsurance premium renewal date on which the Reinsured Net Amount at Risk for such Policy is less than the automatic termination amount specified in the Administration Schedule, provided the reinsurance has been in force for the period specified in the Administration Schedule.

D. Lincoln may terminate all reinsurance under this Agreement in accordance with paragraph D of the "Payments by WCL" article if WCL fails to pay reinsurance premiums when due.

**Entire Agreement**

A. This Agreement represents the entire agreement between WCL and Lincoln and supercedes any prior oral or written agreements between the parties regarding its subject matter.

B. No modification of this Agreement shall be effective unless set forth in a written amendment executed by both parties.

C. A waiver of a right created by this Agreement shall constitute a waiver only with respect to the particular circumstance for which it is given and not a waiver in any future circumstance.

**Deferred Acquisition Cost Tax Election**

A. Lincoln and WCL each acknowledge that it is subject to taxation under Subchapter "L" of the Internal Revenue Code of 1986 (the "Code").

B. With respect to this Agreement, Lincoln and WCL agree to the following pursuant to Section 1.848-2(g)(8) of the Income Tax Regulations issued December 1992, whereby:

981237aLagm
117 / 40

(1) Each party agrees to attach a schedule to its federal income tax return which identifies this Agreement for which the joint election under the Regulation has been made;

(2) The party with net positive consideration, as defined in the Regulation promulgated under Code Section 848, for this Agreement for each taxable year, agrees to capitalize specified Policy acquisition expenses with respect to this Agreement without regard to the general deductions limitation of Section 848(c)(1);

(3) Each party agrees to exchange information pertaining to the amount of net consideration under this Agreement each year to ensure consistency; and

(4) This election shall be effective for the year that this Agreement was entered into and for all subsequent years that this Agreement remains in effect.

## Definitions

A. **Automatic Limit** - the amount specified in the Life Benefits Schedule used to calculate the maximum Reinsurance Amount that may be ceded as Automatic Reinsurance.

B. **Automatic Reinsurance** - reinsurance satisfying certain conditions relating to the reinsurance as specified in the Agreement that is ceded to Lincoln without obtaining a specific offer to reinsure from Lincoln.

C. **Claims Ratio** - the Reinsured Net Amount at Risk on which reinsurance premiums have been computed divided by the Policy Net Amount at Risk calculated as of the date of the last premium payment.

D. **Continuation** - a new Policy replacing a Policy or a change in an existing Policy issued or made either

(1) in compliance with the terms of the Policy; or

(2) without

(a) the same new underwriting information WCL would obtain in the absence of the Policy;

(b) a suicide exclusion or contestable period as long as those contained in other new issues of Policies; or

(c) the payment of the same commissions in the first year that WCL would have paid in the absence of the original Policy.

E. **Effective Date** - the date specified on the cover page on which this Agreement becomes binding on WCL and Lincoln.

F. **Error** - any isolated deviation from the terms of this Agreement resulting from the act or omission of an employee of either WCL or Lincoln whose principal function relates to the administration of reinsurance, whether such deviation results from inadvertence or a mistake in judgment. "Error" shall not include any failure to comply with the terms of an offer of Facultative Reinsurance or any negligent or deliberate deviation from the terms of this Agreement.

G. **Facultative Reinsurance** - reinsurance that is ceded to Lincoln only after WCL has obtained and accepted a specific offer to reinsure made by Lincoln. Such reinsurance may be ceded to Lincoln only upon the terms specified by Lincoln in its offer to reinsure and the terms of this Agreement that do not conflict with the specific offer to reinsure.

H. **Lincoln's Proportionate Share** - the Reinsurance Amount divided by the death benefit of a Policy as of the date of issue or as of the date of a subsequent change to the Policy that affects the Reinsurance Amount.

I. **Material Change** - a change that a prudent insurance or reinsurance executive would consider as likely to impact upon a party's financial experience under this Agreement.

J. **Participation Limit** - the amount specified in the Life Benefits Schedule used as a condition for ceding Automatic Reinsurance.

K. **Policy(ies)** - an individual life insurance contract issued by WCL on any of the Policy forms specified in the Life Benefits Schedule. A "Policy" shall include any attached riders and endorsements specified in the Life Benefits Schedule or any Addendum to this Agreement.

L. **Policy Net Amount at Risk** - on the reinsurance premium renewal date, the death benefit of a Policy less either the terminal reserve or, in the case of interest sensitive Policies, the accumulation account or cash value on the Policy, such difference taken to the nearest dollar. The terminal reserve or cash value shall be disregarded if a Policy is on either a level term plan of twenty years or less or on a decreasing term plan. The basis for determining the Policy Net Amount at Risk may be modified with the consent of both WCL and Lincoln without the need for a formal amendment of this Agreement.

M.  **Reinsurance Amount** - the Policy death benefit at issue less any accumulative value, if applicable, less the Retention on the Policy times the percentage of Automatic Reinsurance ceded to Lincoln as specified in the Life Benefits Schedule.  For Facultative Reinsurance, the "Reinsurance Amount" is that amount of the Policy death benefit at issue for which WCL accepts Lincoln's offer to reinsure.

N.  **Reinsured Net Amount at Risk** - Lincoln's Proportionate Share times the Policy Net Amount at Risk.

O.  **Retention** - the amount specified in the Life Benefits Schedule that is held by WCL at its own risk on a life without the benefit of proportional reinsurance.  In calculating the Retention, the sum retained by WCL on the life and in force as of the date of issue of the Policy shall be taken into account.

P.  **Ultimate Amount** - the projected maximum Policy Net Amount at Risk that a Policy could achieve based on reasonable assumptions made about the operation of certain characteristics of the Policy form.

## Execution

WCL and Lincoln, by their respective officers, executed this Agreement in duplicate on the dates shown below.  As of the Effective Date, this Agreement consists of

- this Yearly Renewable Term Reinsurance Agreement numbered 40;
- a Life Benefits Schedule;
- an Administration Schedule;
- a Premium Schedule;
- an Arbitration Schedule;
- a Premium Receipt Addendum;
- a Last Survivor Addendum; and
- a Policy Split Addendum.

WEST COAST LIFE INSURANCE COMPANY

Signed at _____ San Francisco _____

By _____ [signature] _____

Title _____ Sr. V.P. & Actuary _____

Date _____ 4/8/99 _____

By _____ David D. Langknecht _____

Title _____ Vice President _____

Date _____ May 13, 1999 _____

THE LINCOLN NATIONAL LIFE INSURANCE COMPANY

Signed at Fort Wayne, Indiana

By _____ [signature] _____
Vice President

Date _____ 12/1/98 _____

By _____ Elena Giles _____
Assistant Secretary

Date _____ December 1, 1998 _____

[Appendices and attachments omitted from Exhibit]

# ARBITRATION SCHEDULE

(Effective as of April 1, 1998)
to
Agreement Number 40

To initiate arbitration, either WCL or Lincoln agrees to notify the other party in writing of its desire to arbitrate, stating the nature of its dispute and the remedy sought. The party to which the notice is sent agrees to respond in writing to the notification within ten (10) days of its receipt.

The arbitration hearing shall be held before a panel of three (3) arbitrators, each of whom must be a present or former officer of a life insurance company. An arbitrator may not be a present or former officer, attorney or consultant of WCL or Lincoln, or either's affiliates.

WCL and Lincoln agree to each name five (5) candidates to serve as an arbitrator. Each agree to choose one (1) candidate from the other's list, and these two (2) candidates shall serve as the first two (2) arbitrators. If one (1) or more candidates so chosen decline to serve as an arbitrator, the party that named the candidate shall add an additional candidate to its list, and the other party agrees to again choose one (1) candidate from the list. This process shall continue until two (2) arbitrators have been chosen and have accepted. WCL and Lincoln agree to present their initial lists of five (5) candidates by written notification to the other party within twenty-five (25) days of the date of the mailing of the notification initiating the arbitration. Any subsequent additions to the list which are required shall be presented within ten (10) days of the date the naming party receives notice that a candidate who has been chosen declines to serve.

The two (2) arbitrators shall select the third arbitrator from the eight (8) candidates remaining on the lists of WCL and Lincoln within fourteen (14) days of the acceptance of their positions as arbitrators. If the two (2) arbitrators cannot agree on the choice of a third, then this choice shall be referred back to WCL and Lincoln. WCL and Lincoln agree to take turns striking the names of the remaining candidates from the initial eight (8) candidates until only one (1) candidate remains. If the candidate so chosen shall decline to serve as the third arbitrator, the candidate whose name was stricken last shall be nominated as third arbitrator. This process shall continue until a candidate has been chosen and accepted. This candidate shall serve as the third arbitrator. The first turn at striking the name of a candidate shall belong to the party that is responding to the other party's initiation of arbitration. Once chosen, the arbitrators are empowered to decide all substantive and procedural issues by a majority of votes.

It is agreed that each of the three (3) arbitrators should be impartial regarding the dispute and should resolve the dispute on the basis described in the "Arbitration" article. At no time shall either WCL or Lincoln contact or otherwise communicate with any person who is to be or has been designated as a candidate to serve as an arbitrator concerning the dispute, except upon the basis of jointly drafted communications provided by both WCL and Lincoln to inform those candidates actually chosen as arbitrators of the nature and facts of the dispute. Likewise, any written or oral arguments provided to the arbitrators concerning the dispute shall be coordinated with the other party and shall be provided simultaneously to the other party or shall take place in the presence of the other party. Further, at no time shall any arbitrator be informed that he or she has been named or chosen by one party or the other.

The arbitration hearing shall be held on the date and in the location set by the arbitrators. In no event shall this date be later than six (6) months after the appointment of the third arbitrator. As soon as possible, the arbitrators shall establish prearbitration procedures as warranted by the facts and issues of the particular case. At least ten (10) days prior to the arbitration hearing, each party agrees to provide the other party and the arbitrators with a detailed statement of the facts and arguments it will present at the arbitration hearing. The arbitrators may consider any relevant evidence and agree to give the evidence such weight as they deem appropriate after consideration of any objections raised concerning it. The party initiating the arbitration shall have the burden of proving its case by a preponderance of the evidence. Each party may examine any witnesses who testify at the arbitration hearing. Within twenty (20) days after the end of the arbitration hearing, the arbitrators shall issue a written decision that sets forth their findings and any award to be paid as a result of the arbitration, except that the arbitrators may not award punitive or exemplary damages. In their decision, the arbitrators shall apportion the costs of arbitration, which shall include, but not be limited to, their own fees and expenses.

[Appendices and attachments omitted from Exhibit]

# EXHIBIT 3
# (Submitted for filing under seal)

**[REDACTED]**